UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOROTHY LEE,

    Plaintiff,                           Civil Action No. 05-70724

v.                                        HON. NANCY G. EDMUNDS
                                           U.S. District Judge
                                           HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL            U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

        Plaintiff Dorothy Lee brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## **PROCEDURAL HISTORY**

        On January 30, 2001, Plaintiff filed an application for SSI benefits, alleging an

onset of disability date of January 9, 2001[1] (Tr. 43-45). After the initial denial of her claim, Plaintiff filed a timely request for an administrative hearing, conducted on February 18, 2003 in Flint, Michigan before Administrative Law Judge (ALJ) G. Roderick Anderson (Tr. 273). Plaintiff, represented by attorney Mikel Lupisella, testified (Tr. 280-297). Stephanie Leech, acting as Vocational Expert (VE) also testified (Tr. 297-304). ALJ Anderson found that although Plaintiff was unable to perform any of her past work, she retained the capacity to perform a significant range of light work (Tr. 23). On February 5, 2005, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on February 25, 2005.

## BACKGROUND FACTS

Plaintiff, born January 27, 1951, was age fifty-two when the ALJ issued his decision (Tr. 23). She completed tenth grade and worked previously as an ironer (Tr. 95, 280). She alleges disability due to chronic arm and foot pain, affective disorder, adjustment disorder and a personality disorder (Tr. 17).

### A. Plaintiff's Testimony

On February 18, 2003 Plaintiff, a former special education student, testified before ALJ Anderson that she had completed tenth grade and could "read a little and write a little,"

---

[1] At the administrative hearing, all parties stipulated to an amended onset date of January 27, 2001 (Tr. 17). Plaintiff filed a prior disability application on September 21, 1998 which was denied on December 23, 1998 (Tr. 16). The administrative law judge (ALJ) found that "the record establishes no basis for reopening the final denial" of the first application, specifying that "[r]eference to medical documents dated prior to the final denial is made for medical/historical purposes only" (Tr. 16).

adding that she could perform simple calculations (Tr. 280-281). She reported that she stood 5' 5" and weighed 110 pounds (Tr. 282). She stated that she had been separated from her husband "for years," and currently lived by herself in an apartment (Tr. 282). She reported that prior to becoming disabled, she worked at a dry-cleaning establishment in Saginaw, Michigan (Tr. 283).

Plaintiff acknowledged that she had been convicted of a drug offense, testifying that she had been incarcerated for five months before beginning work as an ironer (Tr. 283). She stated that since the onset of her disability she had spent one month in jail for knifing a man during a fight (Tr. 286). She reported that she did not receive any type of unemployment or compensation benefits except for food stamps (Tr. 286-287). She testified that she supported herself by "helping friends," along with aid she received from various churches (Tr. 287). She stated that she faced imminent eviction from her current home, indicating that she could no longer rely on her landlady, who had allowed her to live rent-free since she had ceased work (Tr. 287). Plaintiff admitting to a history of drug abuse, including the use of Cocaine, Heroin, and Marijuana, but stated that she had not taken drugs since her most recent release from jail (Tr. 288). She stated that she had not used alcohol in a "long time" (Tr. 288). She reported that taking Elavil at bedtime made her sleepy during the day, stating that her fatigue obliged her to rest during the day (Tr. 289). She opined that her health had worsened since she applied for disability in 2001 (Tr. 289). She stated that she could wash and groom herself, but experienced difficulty showering due to foot pain (Tr. 289-290).

Plaintiff indicated that she had experienced foot pain since stepping on a nail as an

eight-year-old, adding that she now suffered from severe bunions (Tr. 290). She stated that her feet "burn constantly all the time," and that she achieved relief only by keeping her feet elevated (Tr. 290). She testified further that bending and lifting created back pain, adding that she took Tylenol III to relax her back (Tr. 290). She reported that she experienced the onset of severe headaches after a head injury in the 1980s (Tr. 291). She stated that the headaches, which caused shaking and temporary blindness, were triggered by bright lights and certain odors (Tr. 291).

In addition to her headaches and foot problems, Plaintiff testified that she suffered from arthritis in her hands which caused her hands to cramp, creating difficulty gripping and holding objects (Tr. 292). She stated that her son usually helped her with laundry and cooking chores (Tr. 292). She estimated that she could stand for a maximum of fifteen to twenty minutes and walk for no more than one block before experiencing foot and leg pain (Tr. 293). She testified that she could sit for twenty to twenty-five minutes before experiencing back pain (Tr. 296). She stated that her foot and leg problems obliged her to lie down a substantial portion of the day (Tr. 294). She testified that she could not lift more than a half-gallon of milk due to hand problems (Tr. 295).

### B.   Medical Evidence

In June, 1998, results of a mental status examination performed by the Michigan Department of Corrections (MDOC) noted that Plaintiff suffered from poor long term memory, further noting that she refused to cooperate in her treatment (Tr. 108). Plaintiff

received a GAF of 65-70[2] (Tr. 108). In June, 1999, Plaintiff sought emergency treatment for lower back pain (Tr. 135). The admitting physician noted that while awaiting treatment, Plaintiff seemed "extremely comfortable," reporting that she fell asleep (Tr. 136). He noted further that Plaintiff "appeared to be in no distress whatsoever," adding that she exhibited no difficulty walking or sitting (Tr. 136). Treating staff gave Plaintiff Robaxin 750 mg. for muscle relaxation (Tr. 136). Plaintiff again sought emergency treatment in September, 1999 after overdosing on Buspar (Tr. 141). She stated that she was depressed following an altercation with another woman at the shelter where she had been staying since her release from jail (Tr. 140). Hospital staff diagnosed Plaintiff with tricyclic antidepressant overdose, generalized arthritic problems, malnutrition, depression, anxiety, and chronic back pain problems (Tr. 145). Robert A. Hemphill, D.O., recommended that Plaintiff enroll in a drug rehabilitation program (Tr. 145-146). In October, 1999, Plaintiff was again admitted for emergency treatment, complaining of headaches (Tr. 147). Upon examination, admitting physicians diagnosed her with poly-substance overdose of Flexeril, Tricyclic, a depressant, Benzodiazepines and Benadryl (Tr. 148). In July, 2000, B. Hartfelder, M.D., examined Plaintiff, noting that she did not exhibit back tenderness (Tr. 152). Dr. Hartfelder prescribed Tylenol No. 3 (Tr. 152). Later the same month, Plaintiff presented for emergency care with

---

[2]GAF scores in the range of 61-70 indicate "some mild symptoms [of depression] or some difficulty in social, occupational, or school functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 32 (*DSM-IV-TR* ), 30 (4th ed.2000).

acute facial contusions secondary to an alleged assault (Tr. 154). She admitted to hospital staff that she used alcohol at least four times a week, but denied illicit drug use (Tr. 153). Several days later, Plaintiff developed complications, experiencing an edema over her right cheek, which hospital staff incised and drained (Tr. 158-159). In January, 2001, Plaintiff sought emergency treatment after an alleged assault (Tr. 167). Hospital staff noted that x-rays showed a left ulnar fracture (Tr. 167). Notes from a followup exam indicate that Plaintiff denied any weakness of grip; however surgery was recommended to realign her forearm (Tr. 180). Plaintiff's arm surgery was postponed after a pre-operative urinalysis showed recent cocaine use (Tr. 181).

In September, 2000, Dr. Hemphill submitted a medical examination report to Family Independence Agency (FIA), stating that Plaintiff's lifting ability was limited to five pounds on an occasional basis and that she could not perform any grasping, reaching, pushing, pulling, or fine manipulations (Tr. 227). He found further that Plaintiff was capable of employment, but could not "stand on any job" (Tr. 228).

In December, 2000, Andrew H. Cohen, D.P.M., examined Plaintiff's feet, noting hallux valgus deformities in both feet, lateral deviation of the sesamoids, along with "severely contracted hammertoes" (Tr. 197). Plaintiff underwent debridement of foot lesions (Tr. 195). Dr. Cohen noted that he refused Plaintiff's request for a narcotic analgesic, but noted that if accommodative insoles or shoes did not relieve her symptoms, she might be a candidate for surgical intervention (Tr. 195). During Plaintiff's subsequent incarceration, an intake evaluation performed in May, 2001 noted that Plaintiff read at a grade level of 4.9 and

a math level at 4.9 (Tr. 132).  Her personality profile indicated that she was "overly concerned with complaints, depressed, theatrical, and manipulative" (Tr. 132).

In July, 2001, Margaret K. Cappone Ph.D, L.P., examined Plaintiff on behalf of the State of Michigan Disability Determination Service (DDS) (Tr. 199). Plaintiff reported depression, weight loss, and alleged past suicide attempts (Tr. 199). She admitted to multiple incarcerations for shoplifting, drinking, and assault, also reporting a history of solicitation (Tr. 200).  Dr. Cappone reported that Plaintiff expressed poor self-esteem and demonstrated a hostile attitude during her examination (Tr. 201). Verbal test results placed her in the mild to moderate range of mental retardation, however, Dr. Cappone opined that the test results were an "underestimate," deeming Plaintiff's true level of intellectual functioning as "borderline" (Tr. 203).  She diagnosed Plaintiff with antisocial personality disorder, assigning her a GAF of 33[3] (Tr. 204).

In July, 2001, a Psychiatric Review Technique Form (PRTF) completed by R. Newhouse, M.D., concluded that Plaintiff experienced anti-social personality and substance addiction disorders (Tr. 209).  He deemed Plaintiff's intellectual functioning as "subaverage," but noted that her IQ testing had yielded invalid results (Tr. 213).  Dr. Newhouse concluded his report by stating that he was "unable to adjudicate" Plaintiff's true condition due to the inconsistency of information she had presented to various care providers

---

[3]A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication ... or major impairment in several areas, such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 34 (4th ed.2000).

(Tr. 221).

In January, 2002, Plaintiff sought emergency treatment for a migraine headache (Tr. 248). Plaintiff reported improvement after hospital staff administered 1.25 mg. of Inapsine (Tr. 249). A psychiatric evaluation performed in March, 2002 assigned Plaintiff a GAF of 55[4] (Tr. 258). In June, 2003, diagnostic imaging of Plaintiff's right knee showed normal results (Tr. 268).

### C. Vocational Expert Testimony

VE Stephanie Leech classified Plaintiff past work as unskilled at the light level of exertion (Tr. 95). She testified, relying on her vocational analysis, that Plaintiff did not possess transferable skills (Tr. 299). She stated that based on Plaintiff's testimony, she would be unable to perform her past work, due to her alleged need to nap twice a day (Tr. 299).

ALJ Anderson then posed the following hypothetical question:

"Now let's take a hypothetical worker of Ms. Lee's same age of – she's now, oh, 49 years at onset . . . with a 10th grade education, as I've previously described, in special education with the elementary ability to read and basic math and reading and writing. Able to do work at a light level. Sit/stand option. No prolonged walking, standing or sitting. No repetitive pushing or pulling. Only simple tasks requiring one, two, or three steps. No requirement set realistic goals or plan independently. No requirement to understand, remember, and carry out detailed instructions or to maintain attention span and concentration for extended periods of time. Would there be work in the

---

[4] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 30 (4th ed.2000).

national or regional economy this worker would be able to perform?"
(Tr. 299-300).

VE Leech found that such an individual possessed the capability to perform 3,500 assembler positions, 2,500 inspector positions and 1,500 packer positions (Tr. 300). The VE stated that her job findings were consistent with the Dictionary of Occupational Titles (DOT) and represented regional incidence figures for the lower peninsula of the state of Michigan (Tr. 300).

In response to questioning by Plaintiff's attorney, the VE stated that if Plaintiff were unable to perform simple grasping, reaching, or fine manipulations, the above jobs would be eliminated (Tr. 302). She testified that if Plaintiff would also be precluded from the above work if she were unable to lift twenty pounds occasionally and ten pounds frequently (Tr. 303). She reported that if Plaintiff were unable to work around bright lighting, strong odors, or loud noise that the above positions in assembly, inspection, and packing would be respectively limited to 2,000, 1,700, and 1,000 jobs (Tr. 303).

### D.     The ALJ's Decision

Citing Plaintiff's medical records, ALJ found the severe impairments of chronic pain in her left arm following a fracture, chronic foot pain, affective disorder, adjustment disorder, and personality disorder (Tr. 17). Nonetheless, he determined that although Plaintiff had a severe impairment or combination of impairments none met or equaled any

impairment listed in Appendix 1 (20 CFR 416.920(d) (Tr. 17).

He found that while Plaintiff was unable to perform any past relevant work as an ironer, she retained residual functional capacity to perform:

> "The exertional and non-exertional requirements of work except for lifting more than twenty pounds or frequently lifting and carrying more than ten pounds; sit/stand option; no prolonged walking, standing or sitting; no repetitive pushing or pulling; and no requirement to perform more than simple tasks requiring only a 1, 2, 3-step process, understand, remember and carry out detailed instructions, maintain attention span and concentration for extended periods, set realistic goals and plan independently " (Tr. 21).

Citing the VE's testimony, ALJ Anderson found that Plaintiff could perform a significant number of jobs in the national economy, including 3,500 jobs as an assembler, 2,500 jobs as an inspector, and 1,500 jobs as a packer (Tr. 21). He found that Plaintiff's allegations of limitations "not totally credible," noting that "the extent, duration[,] and frequency reported is not supported by the evidence of record" (Tr. 20). In further support of his credibility determination, he observed that Plaintiff lived independently, shopped and visited relatives (Tr. 20). He also noted that Plaintiff's allegations of "chronic left arm, back, leg and foot pain" were not supported by the record, pointing out that Plaintiff's scheduled surgery for an ulna fracture was postponed after she tested positive for cocaine use, and although Plaintiff alleged constant foot pain, she did not follow through with podiatry treatment (Tr. 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of*

*Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe

impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Hypothetical Question

Plaintiff argues that the hypothetical question posed to the VE did not reflect her true exertional limitations. *Plaintiff's Brief* at 8. She submits that the ALJ's decision improperly omitted Dr. Hemhill's finding that Plaintiff should be restricted from lifting more than five pounds occasionally and be precluded from all grasping, reaching, pushing/pulling or fine manipulations. *Id.* at 9; Tr. 227. Plaintiff, arguing that the deficiencies in the hypothetical question invalidated the VE's findings, cites *Felisky v. Bowen,* 35 F. 3d 1027 (6th Cir. 1994), which states that "for a response to a hypothetical question to constitute substantial evidence, each element of a hypothetical must accurately describe the Claimant." *Felisky*, at 1036.[5]

---

[5] Plaintiff concedes that she is capable of sedentary work, which would nonetheless mandate a finding of disability, given her age. *Plaintiff's Brief* at 9. 20 CFR § 404.1563 (d) states, "If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your

-12-

Plaintiff correctly argues that an improper hypothetical question cannot serve as substantial evidence under § 405(g), and can result in a remand or reversal. *Whitmore v. Bowen,* 785 F.2d 262, 263-64 (8th Cir. 1986). "Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ . . . a determination of non-disability based on such a defective question cannot stand." *See also Bowling v. Shalala,* 36 F.3d 431, 436 (5th Cir. 1994). Sixth Circuit case law also supports Plaintiff's argument that a hypothetical question must reflect an individual's limitations. *See Webb v. Commissioner of Social Sec.* 368 F.3d 629 (6th Cir. 2004).

While Plaintiff employs the commonly used principle that a VE's testimony cannot constitute substantial evidence if the hypothetical question is incomplete, that principle, often cited by this Court, is inapplicable to the present case. Although Dr. Hemphill's fairly long relationship with Plaintiff qualifies him as a treating physician, *see Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004), the ALJ properly declined to adopt a portion of his September, 2000 conclusions (Tr. 227). For starters, Dr. Hemphill's report contains inconsistent findings. Although he found that Plaintiff could perform no grasping,

---

ability to adjust to other work." A finding that a claimant closely approaching advanced age with skills analogous to Plaintiff's could perform only sedentary work would generally direct a finding of disabled. "The 'grid,' Pt. 404, Subpt. P, App. 2, directs a finding of disabled if plaintiff had a residual functional capacity (RFC) for sedentary work, § 201.09, but not if his RFC is light, § 202.10." *Davis v. Secretary of Health and Human Services* 634 F.Supp. 174, 177 (E.D.Mich.,1986). However, for the reasons set forth below, I find that the ALJ permissibly found that Plaintiff could perform work at the *light* exertional level.

reaching, pushing, pulling, or fine manipulations, he contradicted his own conclusions in another portion of the form which stated that Plaintiff could perform activities such as bathing, grooming, dressing, meal preparation, shopping, and laundry chores without medical assistance (Tr. 228).  *See Wilson, supra,* at 544 which states that ALJ must consider "supportability of the [physician's] opinion" in deciding what weight should be accorded to his/her conclusions.  Likewise, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994), *quoting Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

Even assuming that the ALJ had given Dr. Hemphill's opinion controlling weight, the restrictions the doctor placed on Plaintiff's activities appear to be temporary, rather than permanent, since he also stated that Plaintiff was restricted from her usual occupation for only two months (Tr. 228).  Although Dr. Hemphill placed other limitations on Plaintiff's prospective work activities, such as the inability to stand "on any job," that prohibition was also apparently intended to be only temporary since within the same month, he stated that Plaintiff was "unable to work due to callouses on foot *pending foot* [doctor] *appointment* (emphasis added) (Tr. 236).

This Court notes in closing that its conclusion upholding the ALJ's finding of non-disability is not intended to trivialize Plaintiff's legitimate problems.  Her various hardships - apparently self-induced to a great extent - present a harrowing record.  As noted by Defendant, Plaintiff has not questioned the propriety of the ALJ's non-exertional impairment

-14-

findings and therefore, such arguments are deemed waived, pursuant to *U.S. v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002).[6] Based on a review of this record as a whole, the ALJ's decision, supported by substantial evidence, is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, pursuant to *Mullen v. Bowen, supra,* and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

---

[6]Although not raised by Plaintiff, the Court also finds that the ALJ's mental health findings, discussed at length in his decision, were also supported by substantial evidence.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: November 1, 2005

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 1, 2005.

S/Gina Wilson<br>
Judicial Assistant